UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60274-CIV-COHN/SELTZER

NOLAN CAMPBELL,

    Plaintiff,

vs.

MOON PALACE, INC. d/b/a
PEKING DUCK HOUSE, a Florida corporation,

    Defendant.
_____/

ORDER ON MOTION TO COMPEL DISCOVERY

THIS CAUSE is before the Court on Defendant's Motion to Compel Discovery (DE 27), Plaintiff's Opposition (DE 31), and Defendant's Reply (DE 32) and the Court being sufficiently advised, it is hereby ORDERED that Defendant's Motion is GRANTED in part and DENIED in part for the reasons set forth below.

Plaintiff Nolan Campbell brings this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et. seq.,* seeking declaratory and injunctive relief, attorney's fees, and litigation expenses and costs.  Plaintiff alleges that he is a disabled individual within the meaning of the ADA and that he depends on a wheelchair for mobility.  In his Complaint, Plaintiff identifies numerous (alleged) ADA violations by Defendant, including, but not limited to, non-ADA compliance in the following areas of Defendant's premises:  exterior and interior doors, the main entrance, bar/serving counter, cashier desk, aisles, seating, restrooms, and parking.

Defendant now moves the Court to compel Plaintiff to produce documents responsive to its First Request for Production of Documents and to provide a better answer to one interrogatory of its First Set of Interrogatories. Plaintiff has objected to the document requests and the interrogatory at issue on the ground that the documents sought are not relevant to the issues in this case and are not likely to lead to the discovery of admissible evidence.[1] Plaintiff further contends that Defendant propounded the discovery requests at issue for the purposes of "harrassment, annoyance, embarrassment, oppression, or undue burden." Opposition at 2 (DE 31).

Defendant seeks production of essentially two types of documents – Plaintiff's financial records and documents relating to other ADA lawsuits brought by Plaintiff. Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). And for good cause shown a party may obtain discovery of "any matter relevant to the subject matter involved in the action." Id. Additionally, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Clearly, the documents sought are unrelated to Plaintiff's claim that Defendant's premises are not compliant with the ADA. Defendant, however, argues that the documents it seeks are relevant to three defenses – Plaintiff's lack of standing, an *in pari delicto* defense, and a "serial plaintiff" defense.

## Lack of Standing Defense

Defendant has asserted Plaintiff's lack of standing as an affirmative defense. See

---

[1] Plaintiff also objects to most of the discovery requests as being overly broad and/or ambiguous.

Third Affirmative Defense (DE 26). Defendant contends that Plaintiff does not have standing to bring this ADA lawsuit because he has only dined at Defendant's restaurant once and does not intend to patronize the establishment in the future.

With respect to the production of Plaintiff's financial documents (his 2010 tax returns and his 2010 and 2011 W-2s and/or 1099 forms), Defendant argues that such documents will demonstrate whether Plaintiff has the financial capability to be a regular patron of the Defendant's restaurant.[2] Although Plaintiff may have to demonstrate that he intends to patronize Defendant's restaurant in the future, the ADA does not require (and Defendant has cited no authority in support of its argument) that Plaintiff himself must be able to afford or, in fact, pay for the services offered at a defendant's premises; the plaintiff could visit the premises as a guest of others. Accordingly, the Court does not find that Plaintiff's financial records are relevant to Defendant's standing defense for the reason given by Defendant.

### *In Pari Delicto* Defense

Defendant next argues that Plaintiff's financial documents and documents relating to other ADA lawsuits brought by Plaintiff "would be relevant to determine whether the Plaintiff is earning any money from these cases through an improper fee agreement, thereby supporting an *in pari delicto* defense, since doing so would be a violation of the Florida Bar rules." Motion at 4, 6, 7-8, 9, 11 (DE 27).

The *in pari delicto* defense (a corollary of the unclean hands doctrine) "derives from the Latin *in pari delicto potior est conditio defendentis:* 'In a case of equal or mutual fault

---

[2] Defendant also argues that Plaintiff's financial records are pertinent to its *in pari delicto* defense and to its "serial plaintiff" defense. The Court will address those defenses *infra*.

. . . the position of the [defending] party . . . is the better one.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306 (1985) (quoting Black's Law Dictionary 711 (5th ed. 1979)); see also Gastaldi v. Sunvest Resort Communities, LC, No. 08-62076-Civ, 2010 WL 457243, at *11 (S.D. Fla. Feb. 3, 2010) (Altonaga, J.) ("*In pari delicto* means 'in equal fault. The phrase appears in the legal maxim: Where both parties are equally in the wrong, the position of the defendant is the stronger.") (some internal quotation marks and citation omitted). The *in pari delicto* defense is available "only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of [federal law]." Bateman Eichler, 472 U.S. at 310-11. As the Supreme Court has noted:

> The first prong of this test captures the essential elements of the classic *in pari delicto* doctrine. The second prong, which embodies the doctrine's traditional requirement that public policy implications be carefully considered before the defense is allowed, ensures the broad judge-made law does not undermine the congressional policy favoring private suits as an important mode of enforcing federal [statutes]."

Pinter v. Dahl, 486 U.S. 622, 632 (1988).[3]

Defendant has failed to cite any case in which the *in pari delicto* defense has been

---

[3] Some courts deem the *in pari delicto* doctrine an affirmative defense. See, e.g., Gastaldi, 2010 WL 457243, at *11 ("The defense of *in pari delicto* is both an affirmative defense and an equitable defense."); Circle Group Holdings, Inc. v. Akhamzadeh, No. 05 C 3921, 2006 WL 2548164, at *8 (N.D. Ill. Sept. 1, 2006) ("The doctrines of *in pari delicto* and unclean hands are affirmative defenses."); Decatur Ventures, LLC v. Stapleton Ventures, Inc., No. 1:04-CV-0562-JDT-WTL, 2006 WL 1367436, at *4 (S.D. Ind. May 17, 2006) ("The doctrine of *in pari delicto* is an affirmative defense."). Under Federal Rule of Civil Procedure 8, an avoidance or affirmative defense must be pled. Fed. R. Civ. P. 8(c). Defendant here has not included *in pari delicto* (or unclean hands) as one of its affirmative defenses. See Defendant's Answer and Affirmative Defenses (DE 26).

utilized, or even recognized, as a viable defense against an ADA claim. In Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134 (1968), the Supreme Court commented that "[w]e have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes." Id. at 138 (declining to apply *in pari delicto* to defeat a federal antitrust claim); see also Pinter, 486 U.S. at 633 ("public policy implications [must] be carefully considered before the defense is allowed."). "Public policy encourages private actions [such as the ADA] as enforcement devices for the public interest, even though a windfall may accrue to a wrongdoing plaintiff." Berner v. Lazzaro, 730 F.2d 1319, 1322 (9th Cir. 1984). It cannot be doubted that the ADA serves an important public interest. As one district court in the Eleventh Circuit has noted:

> The specific purpose of the ADA is to provide equal opportunities for individuals with disabilities. The statutory language and legislative history make it clear that the ADA was intended to have a broad, remedial purpose. Specifically, its "Findings and Purpose" show that Congress intended the ADA to impact the lives of more than 43,000,000 Americans to address "a serious and pervasive social problem" which "persists" for which they "often had no legal recourse" thereby making people with disabilities "severely disadvantaged." 42 U.S.C. section 12101(a-)(1)-(6) (2009)
>
> Likewise, the ADA's purpose is set forth within the statute itself: to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and to invoke the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities. 42 U.S.C. §§ 12101(b)(1)-(4) (2009).

Raetano v. Kally K's, Inc., No. 808-cv-02104-T-17-TGW, 2009 WL 651808, at *2 (M.D. Fla.

Mar. 12, 2009). At least one court has expressed doubt as to the applicability of the unclean hands doctrine (a corollary of the *in pari delicto* doctrine) to ADA actions. Doe v. Deer Mountain Day Camp, Inc., 682 F.Supp.2d 324, 338 (S.D.N.Y. 2010).

Even assuming that an *in pari delicto* defense is applicable to ADA actions, it does not appear that such defense applies in this case. Such defense is available "only where as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress. . . ." Bateman Eichler, 472 U.S. at 310-11(emphasis added); Gastaldi 2010 WL 457243, at *12-13 (ruling that *in pari delicto* defense inapplicable where the plaintiff did not participate in the same wrongdoing as the defendant); Stanley v. Trinchard, No. 08-1096, 2010 WL 3168113, at *7 (E.D. La. Aug. 9, 2010) ("The *in pari delicto* doctrine bars recovery by a plaintiff who is an active, voluntary participant in the unlawful activity that is the subject of the suit.") (internal quotation marks and citation omitted); OSF Healthcare System v. Banno, No. 08-1096, 2010 WL 431963, at *4 (C.D. Ill. Jan. 29, 2010) ("the *in pari delicto* defense applies when the plaintiff's misconduct was a part of the same transaction or events on which the plaintiff sues, just as with the unclean hands defense"); Chen v. Golden Eagle Corp., Inc., No. C-07-4433 CRB (EMC), 2008 WL 4679864, at *2 (N.D. Cal. Oct. 21, 2008) ("*In pari delicto* . . . asserts that a plaintiff who participated in the wrongdoing cannot recover when he suffers an injury as a result of that wrongdoing.") (quoting Memorex Corp. v. IBM, 555 F.2d 1379, 1381 (9th Cir. 1977)).

Here, Plaintiff's alleged wrongdoing – fee sharing[4] – is not part of the same alleged

---

[4] According to Plaintiff, at his deposition, he denied repeatedly that he had ever received any compensation from any lawsuit, and he stated that he filed ADA actions only

6

wrongdoing by Defendant in this action – maintaining architectural barriers that deny access to disabled persons in violation of the ADA. Until such time as the District Court (or the Eleventh Circuit) determines that an *in pari delicto* defense may act as a bar to an ADA action and the District Court determines that the such defense is applicable under the facts of this case, this Court will not require Plaintiff to produce the documents requested.

<u>"Serial Plaintiff" Defense</u>

Defendant next argues that the documents requested are relevant to a "serial plaintiff" defense. More specifically, Defendant contends that such documents will show that Plaintiff's ADA lawsuits "are being brought as part of a scheme or artifice to use the court system for improper purposes." Motion at 5, 7, 9, and 12 (DE 27). In its Motion to Compel, Defendant fails to identify the alleged "improper purposes" for which Plaintiff brought this lawsuit. In its Motion for Summary Judgment, however, Defendant argues that ADA lawsuits are "used simply as a money-making scheme by lawyers [such as Plaintiff's lawyer] who are making a living off of individuals like the Plaintiff who are essentially 'testers.'" Motion for Summary Judgment at 16 (DE 28). It appears that Defendant premises this argument solely on the number of ADA cases Plaintiff has brought.[5] Defendant, however, has not cited (and

---

for the purpose of making the facility ADA-compliant for him and other disabled persons. Plaintiff argues that Defendant has no basis for believing that a fee sharing arrangement exists. Defendant replies that Plaintiff's inconsistent deposition testimony as to the payment of fees and costs in ADA actions, as well as Plaintiff's failure to produce his bank records "warrant strong suspicion" of fee-sharing. Although the Court does not condone an attorney splitting fees with a non-lawyer, the Court makes no ruling as to whether such an arrangement exists here. For purposes of this Motion only, the Court assumes a fee-sharing arrangement may exist.

[5] According to Defendant, as of June 10, 2011, Plaintiff (represented by the same lawyer) had filed approximately 49 ADA lawsuits in the Southern District of Florida.

the Court's own research has not found) any case in which a court has applied or recognized a "serial plaintiff" defense to bar an ADA action based on the number of ADA cases brought by a particular plaintiff.

In its summary judgment motion, Defendant represents that some courts have dismissed ADA lawsuits based on plaintiff being a "serial plaintiff," citing <u>Molski v. Mandarin Touch Restaurant</u>, 385 F. Supp. 2d 1042 (C.D. Cal. 2005), <u>Access 4 All v. Oak Springs, Inc.</u>, No. No. 504CV750CGRJ, 2005 WL 1212663, at *5 (M.D. Fla. May 20, 2005), and <u>Brother v. Tiger Partner, LLC</u>, 331 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2004).[6] Motion for Summary Judgment at 14 (DE 28).  In none of those cases, however, did the courts recognize a "serial plaintiff" defense nor did they dismiss the ADA claims based solely on the number of ADA cases brought by the plaintiff.   Rather, the courts in <u>Molski</u>, <u>Oak Springs</u>, and <u>Brother</u> each found that the plaintiff lacked standing to bring an ADA action because he had failed to sufficiently demonstrate a threat of future injury.  In so ruling, these courts considered a number of factors, including the proximity of the plaintiff's residence to the defendant's premises, the plaintiff's past patronage of the defendant's business, and the plaintiff's plans to return to the premises.  In assessing the sincerity of the plaintiff's assertion that he planned to return to the defendant premises, these courts found that the number of ADA suits filed by the plaintiffs belied the sincerity of their assertion, deeming it implausible that the plaintiffs intended to return to each of the large number of businesses against which they had filed ADA lawsuits.

---

[6] Defendant also cites <u>Wilson v. Kayo Oil Co.</u>, 535 F. Supp. 2d 1063 (S.D. Cal. 2007).  The Ninth Circuit, however, reversed that case on appeal.  See <u>Wilson v. Kayo Oil Co.</u>, 563 F.3d 979 (9th Cir. 2009).

Moreover, courts have held that the number of ADA cases brought by a particular plaintiff does not demonstrate an improper purpose, wrongdoing, or bad faith. The court in Kittok v. Leslie's Poolmart, Inc., 687 F. Supp. 2d 953, 959 (C.D. Cal. 2009) explained:

> The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law. As the Ninth Circuit has noted . . ., "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."

Id. at 959 (quoting Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007)); see also Wilson v. Pier 1 Imports (US), Inc., 411 F. Supp. 2d 1196, 1199 (E.D. Cal. 2006) (finding record of litigiousness did not establish bad faith on part of the plaintiffs). Indeed, in this case, the District Court has previously stated: "The number of ADA cases that Plaintiff has filed does not demonstrate that he filed this case in bad faith." Order Granting Motion for Leave to Amend Complaint at 2 (DE 23) (citing Karakis v. GM Rests, Inc., No. 08-60291-Civ-DIMITROULEAS, DE 25 at 2 n.1 (S.D. Fla. filed on May 15, 2008) ("The Court is not influenced by the number of lawsuits filed by Plaintiff, given that he has the right to equal and full access to public accommodation under the ADA and thus is not restricted in the number of lawsuits he brings in asserting those rights.")).

In sum, the Court finds that Defendant has failed to demonstrate that an *in pari delicto* defense is a viable defense in an ADA action and if it were, that it is applicable under the facts of this case. The Court further finds that there exists no *per se* "serial plaintiff" defense. The Court, therefore, cannot find that the documents sought are relevant to an *in pari delicto* defense or a "serial plaintiff" defense, as Defendant has not demonstrated that such

9

"defenses" exist to bar an ADA action. And Defendant has not demonstrated that even if an *in pari delicto* defense were applicable to an ADA case, such defense would be applicable to the facts of this case.

Finally, Defendant argues that the documents sought are relevant for impeachment purposes. Defendant correctly notes that courts may permit discovery of documents or information that may be used solely to impeach a witness. See, e.g., Duck v. M.L. Warren, 160 F.R.D. 80, 83 (E.D. Va. 1995); Tisby v. Buffalo Gen. Hosp., 157 F.R.D. 157, 169-70 (W.D.N.Y. 1994). However, "the mere surmise that production might reveal impeaching matter [is] not sufficient to justify production." Duck, 160 F.R.D. at 83 (quoting 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2025 (1994)). As one district court has noted, "defining the scope of discovery related to impeachment is troublesome; the areas to be probed to test a witness' credibility are virtually limitless." Davidson Pipe Co. v. Laventhol and Horwath, 120 F.R.D. 455, 462 (S.D.N.Y. 1988). Courts, therefore, have limited discovery of impeachment evidence to that which would likely lead to admissible evidence. One factor courts have considered in determining whether to permit discovery of impeaching evidence is whether the party seeking disclosure has a foundation or factual basis for its inquiry. Id. at 463. Here, Defendant has failed to proffer any explanation how the documents sought would be used as impeachment; it has failed to provide any factual basis for its inquiry. Indeed, Defendant merely contends that impeaching documents are discoverable. The Court, therefore, will not require Plaintiff to produce the documents requested for impeachment purposes.

Based on the foregoing, Defendant's Motion to Compel with respect to Requests 5, 6, 15, 28, 34, and 42 is DENIED.

Other Discovery Requests

Defendant also requests that the Court compel Plaintiff to produce clear copies of the photographs Plaintiff has previously produced in response to Request No. 38. Plaintiff has failed to address Defendant's need for such clearer copies. Accordingly, Defendant's Motion with respect to Request No. 38 is GRANTED. Within seven (7) days of the date of this Order, Plaintiff shall produce either the original of the photographs (that he has already produced) for Defendant's inspection and copying or shall produce clear copies thereof.

Additionally, Defendant requests that the Court compel Plaintiff to provide a better answer to Interrogatory No. 15. Interrogatory No. 15 requests that Plaintiff "identify the individual(s) or entity (or entities) responsible for paying the legal costs, in whole or in part, associated with funding this lawsuit." Plaintiff responded to Interrogatory 15: "As of yet, the Defendants of each lawsuit have settled the amounts with the Shemtov Law firm." But in conferring with Defendant's counsel, Plaintiff's counsel indicated that Plaintiff would supplement this Interrogatory, to wit: "as explained in deposition, Shemtove Law Firm paid up front costs for initiating lawsuit." Response at 14 (DE 31). Plaintiff contends that no other clarification can be made. Defendant replies that the information requested by this Interrogatory is relevant to an *in pari delicto* defense, to a "serial plaintiff" defense, and for impeachment purposes. For the same reasons that the Court denied the requests for production of documents based on these grounds, the Motion with respect to Interrogatory 15 is DENIED.

In sum, Defendant's Motion to Compel with respect to Request Nos. 5, 6, 15, 28, 34,

11

and 42, and with respect to Interrogatory No. 15 is DENIED.  Defendant's Motion to Compel with respect to Request 38 is GRANTED.

    DONE AND ORDERED in Fort Lauderdale, Florida, this 19th day of August 2011.

*/s/ Barry S. Seltzer*
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record